462-15

ORIGINAL

Oral argument waived

PD-0462-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

***************************************************

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 29 2015

Abel Acosta, Clerk

**SHAWN MAYREIS**
Appellant-Petitioner

V.

**THE STATE OF TEXAS**
Appellee-Respondent

*********************************************************************

FROM THE FOURTEENTH COURT OF APPEALS
CAUSE NO. 14-13-00769-CR

APPEAL FROM THE 184THE JUDICIAL DISTRICT COURT
OF HARRIS COUNTY, TEXAS, CAUSE NO. 1340556
THE HONORABLE JAN KROCKER PRESIDING

*******************************************************

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

*********************************************************************

FILED IN
COURT OF CRIMINAL APPEALS

MAY 29 2015

Abel Acosta, Clerk

By:
**Shawn Mayreis, Pro Se**
TDCJ-CID #1876310
Connally Unit
899 FM 632
Kenedy, Texas 78119

## GROUNDS FOR REVIEW

### GROUND ONE

The court of appeals erred when it held that the trial court did not abuse its discretion in admitting 17 autopsy photographs depicting Mr. Mayreis' two-month-old baby girl with several bruises including bruises on her scalp and her fractured skull.

### GROUND TWO

The court of appeals erred when it held that the trial court did not abuse its discretion in denying Mr. Mayreis' motion for mistrial when the State elicited improper testimony from the homicide detective relating to his post-arrest silence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I § 10 of the Texas Constitution.

# TABLE OF CONTENTS

GROUNDS FOR REVIEW...............................................................ii

TABLE OF CONTENTS...............................................................iii

INDEX OF AUTHORITIES..............................................................v

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.........................................vii

STATEMENT REGARDING ORAL ARGUMENT..............................................vii

STATEMENT OF THE CASE..........................................................vii

STATEMENT OF PROCEDURAL HISTORY...............................................viii

INTRODUCTION.....................................................................1

STATEMENT OF THE FACTS...........................................................1

    1.  Autopsy Photographs..........................................................1

    2.  Testimony Implicating Right to Remain Silent.................................2

ARGUMENT.........................................................................2

  I.  GROUND ONE

      The court of appeals erred when it held that the trial court did not
      abuse its discretion in admitting 17 autopsy photographs depicting
      Mr. Mayreis' two-month-old baby girl with several bruises including
      bruises on her scalp and her fractured skull........................................3

    A.  Reasons for Granting Review.........................................3

    B.  Applicable Law......................................................3

    C.  Application and Analysis.............................................5

    D.  Sufficient Harm is Shown for Reversal...............................6

  II.  GROUND TWO

      The court of appeals erred when it held that the trial court did not
      abuse its discretion in denying Mr. Mayreis' motion for mistrial when
      the State elicited improper testimony from the homicide detectice
      relating to his post-arrest silence in violation of the Fifth and
      Fourteenth Amendments to the United States Constitution and Article
      I § 10 of the Texas Constitution....................................8

    A.  Reasons for Granting Review.........................................8

    B.  Applicable Law......................................................8

C. Application and Analysis.........................................10

D. Sufficient Harm is Shown for Reversal...........................12

PRAYER FOR RELIEF..................................................13

DECLARATION........................................................13

CERTIFICATE OF SERVICE.............................................14

APPENDIX: Fourteenth Court of Appeals' Opinion

## INDEX OF AUTHORITIES

**CASES**                                                         **PAGE**

Casey v. State, 215 S.W.3d 870, 879 (Tex.Crim.App.2007)......................4

Davis v. State, 313 S.W.3d 317, 331 (Tex.Crim.App.2010)...................4, 6

Dinkins v. State, 894 S.W.2d 330, 356 (Tex.Crim,App.1985)...............12, 13

Doyle v. Ohio, 426 U.S. 610, 617-20 (1976)...................................9

Dudley v. State, 548 S.W.2d 706, 707-08 (Tex.Crim.App.1977)..................9

Erazo v. State, 144 S.W.3d 487, 489 (Tex.Crim.App.2004)...................4, 6

Fletcher v. Weir, 455 U.S. 603, 606-07 (1982)...............................9

Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App.2006)......3, 4, 5, 6

Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex.Crim.App.1990)...............9

Logan v. State, 698 S.W.2d 680, 683-84 (Tex.Crim.App.1985)..................10

Ocon v. State, 284 S.W.3d 880, 884 (Tex.Crim.App.2009)......................9

Prible v. State, 175 S.W.3d 724, 734 (Tex.Crim.App.2005)....................6

Reese v. State, 33 S.W.3d 238, 239 (Tex.Crim.App.2000)......................6

Rolle v. State, 367 S.W.3d 746, 751 (Tex.App.—Houston [14th Dist.] 2012)....6

Sanchez v. State, 707 S.W.2d 575, 579-80 (Tex.Crim.App.1980)................9

United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995).............4

United States v. Fields, 483 F.3d 313, 354 (5th Cir. 2007)..................5

Veteto v. State, 8 S.W.3d 805-13 (Tex.App.—Waco 2000)......................12

Wainwright v. Greenfield, 474 U.S. 284, 292 (1986)..........................9

Waldo v. State, 746 S.W.2d 750, 754 (Tex.Crim.App.1988)..............9, 10, 11

Warren v. State, 236 S.W.3d 844, 850 (Tex.App.—Texarkana 2007)..............4

**FEDFERAL CONSTITUTION**

U.S. CONST. amend. V..........................................ii, iii, 2, 8, 11

U.S. CONST. amend. XIV..........................................ii, iii, 8, 11

**STATE CONSTITUTION**

TEX.CONST. art. I § 10...........................................ii, iii, 8, 11

**FEDERAL STATUTES**

28 U.S.C. § 1746........................................................13

**STATE STATUTES**

Tex.Pen.Code § 19.03(a)(8).............................................vii

Tex.Civ.Prac. & Rem.Code, Ch. 132......................................13

**STATE RULES**

Tex.R.Evid. 401..........................................................3

Tex.R.Evid. 403....................................................2, 3, 4

Tex.R.App.P. 44.2(a)....................................................12

Tex.R.App.P. 44.2(b).....................................................6

Tex.R.App.P. 66.3(c)..................................................3, 8

Tex.R.App.p. 66.3(f).....................................................3

Tex.R.App.P. 68.1........................................................1

Tex.R.App.P. 68.4(d)...................................................vii

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

APPELLANT:

Shawn Mayries, Pro Se
TDCJ-CID #1876310
Connally Unit
899 FM 632
Kenedy, Texas 78119

APPELLANT'S TRIAL ATTORNEY:

Skip Cornelius
Attorney at Law
2028 Buffalo Terrace
Houston, Texas 77019

APPELLANT'S APPEAL ATTORNEY:

Kurt B. Wentz
Attorney at Law
5629 Cypress Creek Parkway
Suite 115
Houston, Texas 77069

TRIAL JUDGE:

Honorable Jan Krocker
184th Judicial District Court
1201 Franklin, 17th Floor
Houston, Texas 77002

STATE'S TRIAL ATTORNEY:

Tiffany Johnson
Assistant District Attorney
1201 Franklin, 4th Floor
Houston, Texas 77002

STATE'S APPEAL ATTORNEY:

Alan Curry
Assistant District Attorney
1201 Franklin, 6th Floor
Houston, Texas 77002

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Mayreis waives oral argument. Tex.R.App.P. 68.4(d).

## STATEMENT OF THE CASE

A grand jury indicted Mr. Mayreis for capital murder. (1 CR 38.) The indictment alleged that he intentionally or knowingly caused the death of his two-month-old daughter under Tex.Pen.Code § 19.03(a)(8) by (1) striking her with his hand, (2) striking her with an unknown object, or (3) having her head strike an unknown object. (1 CR 38.) A jury found Mr. Mayreis guilty on August 8, 2013. (1 CR 677.) That same day, the trial court sentenced him to life without parole. (1 CR 682.) The trial court certified his right to

appeal. (1 CR 685.) Mr. Mayreis timely filed notice of appeal. (1 CR 687.) The trial court appointed counsel for appeal after finding that he was indigent. (1 CR 689.) On March 24, 2015, the court of appeals affirmed the conviction and sentence. (Attached Appendix, Court of Appeals' Opinion.)

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals handed down its opinion on March 24, 2015. Shawn Mayreis v. The State of Texas, No. 14-13-769-CR (Tex.App.—Houston [14th Dist.]). Mr. Mayreis did not file a motion for rehearing. This Court granted Mr. Mayreis' an extension of time to file this Petition. This Petition is due by June 22, 2015.

| | | |
|---|---|---|
| SHAWN MAYREIS,<br>TDCJ-CID #1876310,<br><br>    Appellant-Petitioner,<br><br>V.<br><br>THE STATE OF TEXAS,<br><br>    Appellee-Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CCA # PD-0462-15<br><br><br>COA # 14-13-769-CR<br><br><br>TC # 1340556 |

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### INTRODUCTION

On appeal, Appellant Shawn Mayreis challenged (1) the sufficiency of evidence supporting his conviction, (2) the trial court's denial of his motion for mistrial when the State improperly elicited testimony regarding his post-arrest silence, and (3) the trial court's admission of 17 autopsy photographs. (See Mr. Mayreis' Brief on Appeal, pp. 1-2.) Here, Mr. Mayreis argues that the court of appeals erred when it overruled his post-arrest silence claim and his claim against the admission of the autopsy photographs. He abandons his sufficiency of evidence claims up to the point where they become relevant and tie in with the two grounds raised here. At the point where his sufficiency of evidence claims become relevant and tie in with or intersect with the claims raised here, Mr. Mayreis reurges those claims. Appellant Shawn Mayreis did not murder his baby girl. He's innocent of the offense he was convicted of. He respectfully asks the Court to grant discretionary review, as authorized by Tex.R.App.P. 68.1.

### STATEMENT OF THE FACTS

1. **Autopsy Photographs**

The State planned to introduce several autopsy photographs of Mr. Mayreis' two-month-old baby girl during the testimony of the Assistant Medical Examiner,

Appellant's Petition for Discretionary Review - Page 1

Dr. Morna Gonsoulin.* The trial court held a hearing outside the jury's presence to determine the admissibility of the autopsy photographs. Defense counsel objected that all of the proposed exhibits—State's Exhibit #s 21-37—were not admissible because they were not relevant and violated Tex.R. Evid. 403. (4 RR 8.) The trial court overruled counsel's objection. (4 RR 8, 9.)

## 2. Testimony Implicating Right to Remain Silent

Detective Derek Fontenot took the stand. After establishing that the detective talked to Mr. Mayreis' daughter's mother for a second time on March 14, the State elicited testimony regarding the detective's initial pre-arrest conversation with Mr. Mayreis and Mr. Mayreis' subsequent failure to make himself available for a second pre-arrest statement on March 14. (3 RR 173-74.) Towards the end of the detective's testimony the prosecutor asked whether Mr. Mayreis provided him with a statement after his arrest. The detective answered he did not. (3 RR 174.) Counsel immediately approached the bench. In the bench conference that followed counsel made the court aware that this question and answer violated Mr. Mayreis' Fifth Amendment right against self incrimination. The trial court indicated that it was going to instruct the jury to disregard the question and answer. The trial court then denied Mr. Mayreis' motion for mistrial. (3 RR 176.) Later on in the trial, the State again elicited more testimony regarding Mr. Mayreis' pre-arrest silence over counsel's objection after a hearing outside the presence of the jury. (5 RR 61-66.)

## ARGUMENT

---

* In this Petition, I've had to use citations to the record sparingly because all I had was Mr. Mayreis' Brief for Appellant, the Fourteenth Court of Appeals' Opinion, and Volume 5 of the Reporter's Record. I could only use the citations that appellate counsel used and whatever citations I needed to use from Volume 5. I apologize for any inconvenience.

## I.

### GROUND ONE
### Restated

The court of appeals erred when it held that the trial court did not abuse its discretion in admitting 17 autopsy photographs depicting Mr. Mayreis' two-month-old baby girl with several bruises including bruises on her scalp and her fractured skull.

### A. Reasons for Granting Review

The court of appeals determined an important issue of state law in a way that conflicts with the applicable decisions of this Court. See Tex.R.App.P. 66.3(c). The court of appeals has also so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power. See Tex.R.App.P. 66.3(f).

The autopsy photographs admitted in Mr. Mayreis' trial of his two-month-old baby girl were inadmissible because the danger of unfair prejudice outweighed the probative value. See Tex.R.Evid. 403. The trial court abused its discretion when it overruled Mr. Mayreis' objection and admitted the photographs into evidence. (4 RR 8, 9.) The court of appeals erred when it affirmed the trial court's decision. (See Attached Appendix, Court of Appeals' Opinion, pp. 11-14.)

### B. Applicable Law

Evidence relevant for the purpose of Tex.R.Evid. 401 is subject to exclusion under Tex.R.Evid. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice." Tex.R.Evid. 403. The "probative value" of a particular piece of evidence refers to how strongly it serves to make more or less probable any fact that is significant to the case coupled with the proponent's need for that item of evidence. Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App.2006). "Unfair prejudice" refers to evidence

that "tempts a jury into finding guilt on grounds apart from the offense charged." Warren v. State, 236 S.W.3d 844, 850 (Tex.App.—Texarkana 2007).

Evidence tending to improperly suggest a verdict is commonly, though not necessarily, emotional in nature. Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim.App.2007). Evidence is prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action...." United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995) (citation omitted).

The admissibility of autopsy photographs over objection is within the sound discretion of the trial court. Davis v. State, 313 S.W.3d 317, 331 (Tex. Crim.App.2010). When conducting a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Gigliobianco, 210 S.W.3d at 641-42 (emphasis added); see Erazo v. State, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004).

Other factors to be considered in deciding whether the probative force outweighs its unfair prejudice include the number of photographs, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body is clothed or naked, and other circumstances unique to the individual case. Davis, 313 S.W.3d at 331 (citation omitted).

## C. Application and Analysis

The court of appeals found that the photographs were gruesome. (See Attached Appendix, Court of Appeals Opinion, p. 12.) The detailed drawings and figures contained in the autopsy report that the trial court admitted before admitting the photographs eliminated the photographs' probative value. The photographs merely repeated this evidence already admitted. The demonstrative portions of the autopsy report describe the various injuries that were sustained. Dr. Gonsoulin did utilize the photographs during her testimony, but she could just as readily referred to the drawings and figures already admitted in her report. The first Gigliobianco factor weighs in favor of exclusion because there was no inherent probative force of the photographs because the admitted autopsy report contained detailed drawings and figures. The sixth Gigliobianco factor weighs in favor of exclusion because the photographs merely repeated the detailed drawings and figures already admitted in the autopsy report.

What's more is Dr. Gonsoulin never even referred to State's Exhibit #s 23, 28, 29 and 33 during her testimony. Their sole function was to "induc[e] decision on a purely emotional basis." See United States v. Fields, 483 F.3d 313, 354 (5th Cir. 2007). The photographs did not enlighten the jury by aiding the physician's testimony. The third Gigliobianco factor weighs in favor of exclusion because the evidence induced decision on an improper basis—that is, a purely emotional basis.

The fifth Gigliobianco factor also weighs in favor of exclusion. This is because they are so gruesome that they appealed to the jury's sympathies, aroused its sense of horror, and provoked its instincts to punish. the jury was not equipped to evaluate the probative force of the evidence. The tendency of the jury to give undue weight to the photographs weighs heavily

in favor of exclusion.

The potential of the photographs to impress the jury in some irrational yet indelible way favors exclusion. See Erazo, 144 S.W.3d 487, 489. Mr. Mayreis' baby girl was only two months old at the time of her death. Society's natural inclination "to protect the innocent and vulnerable" has been referred to in other cases favoring exclusion of infant autopsy photographs. See Rolle v. State, 367 S.W.3d 746, 751 (Tex.App.—Houston [14th Dist.] 2012) (citing Reese v. State, 33 S.W.3d 238, 239 (Tex.Crim.App.2000)).

The proponent's need for the photographs favors exclusion. In addition to Dr. Gonsoulin, the State called a forensic anthropologist and a child abuse pediatrician. (See 4 RR 115-37; see also 4 RR 140-155.) The prosecution had strong evidence and testimony other than the autopsy photographs to establish death. Thus, the second Gigliobianco factor favors exclusion. See Rolle.

The fourth Gigliobianco factor also weighs in favor of exclusion. This is because it cannot be said that these gruesome photographs did not distract the jury from the main issues of whether Mr. Mayreis caused his child's death or whether he caused her death intentionally or knowingly. See Gigliobianco, at 641-42 (stating that all six factors would blend together).

Lastly, the additional Davis considerations also favor exclusion. The photographs were a full 8" x 10" in size. They were in color. They depicted Mr. Mayreis' baby girl's naked body. They showed the stitches she received from hospitalization. They were gruesome.

### D. Sufficient Harm is Shown for Reversal

Harm in the admission of autopsy photographs is assessed under Tex.R.App. P. 44.2(b). See Prible v. State, 175 S.W.3d 724, 734 (Tex.Crim.App.2005). This involves whether the reviewing court has fair assurance the error did not influence the jury or had but a slight effect on its verdict. Id.

The autopsy photographs in this case influenced the verdict, and they did not have "but a slight effect on its verdict." Mr. Mayreis left his daughter alone in the apartment for several minutes while he rode his bike to the convenience store just outside the apartment complex. (State's Exhibit #19; 3 RR 170-76.) The evidence showed someone else could have done this.

In its opinion, the court of appeals relied heavily on Mr. Mayreis' attorney's argument that he accidentally injured his daughter by improperly administering CPR and that the State was required to prove beyond reasonable doubt that his daughter's injuries were caused intentionally or knowingly. (Attached Court of Appeals' Opinion, pp. 12-13.) But the court of appeals did not take into consideration Mr. Mayreis' argument on appeal that he was not with the child every second of every hour of that day. (See Mr. Mayreis' Brief on Appeal, p. 19.) In analyzing Mr. Mayreis' claim under Rule 403, the court of appeals did not consider Mr. Mayreis' issue #1 on appeal that the evidence was insufficient to prove that Mr. Mayreis was the person who caused her death. (See Mr. Mayreis' Brief on Appeal, pp. 15-22.)

What's more is that the child's injuries were not immediately visible. (See e.g. 3 RR 111, 138.) So even if she were hurt long before paramedics arrived, no reasonable person would have known that she was hurt especially if the child was in and out of consciousness. It would just look like she was taking a nap. This is what happened here. Mr. Mayreis didn't know how hurt she actually was. The photographs took the jury's attention off of the necessary factfinding focus on deciding (1) whether Mr. Mayreis was the actual person who actually caused her death and (2) whether he did so intentionally or knowingly.

Mr. Mayreis' two-month-old baby girl depicted in the photographs appears tiny, innocent and vulnerable. This encouraged the jury to express society's

natural inclination to protect the innocent and the vulnerable.  See Rolle, at 751 (citing Reese, at 239).

## II.

### GROUND TWO
### Restated

> The court of appeals erred when it held that the trial court did not abuse its discretion in denying Mr. Mayreis' motion for mistrial when the State elicited improper testimony from the homicide detective relating to his post-arrest silence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I § 10 of the Texas Constitution.

### A. Reasons for Granting Review

The court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of this Court or the Supreme Court of the United States.  See Tex.R.App.P. 66.3(c).  The State elicited improper testimony relating to Mr. Mayreis' post-arrest silence immediately after it elicited testimony relating to his pre-arrest silence. (3 RR 173-74.)  The State used a series of questions that magnified Mr. Mayreis' decisions to remain silent both before and after his arrest.  (Id.) Before Mr. Mayreis was arrested, he became the target of the investigation. What's more is the court of appeals erred when it did not consider in its analysis the damaging effects the detective's testimony relating to Mr. Mayreis' pre-arrest silence had on the improper testimony relating to his post-arrest silence.  (See 3 RR 173-76; 5 RR 61-66.)  Under these circumstances, the court of appeals erred when it did not reverse Mr. Mayreis' conviction and severe sentence.

### B. Applicable Law

No person shall be compelled in any criminal case to be a witness against himself.  U.S. CONST. amend. V; TEX.CONST. art. I § 10.  The Fourteenth Amendment guarantee of due process prohibits comment on an accused's post-

arrest silence after Miranda warnings are given. Doyle v. Ohio, 426 U.S. 610, 617-20 (1976); Fletcher v. Weir, 455 U.S. 603, 606-07 (1982). The prohibition against the use of a defendant's post-arrest silence is based on the unfairness of assuming one has a right to remain silent and then use that silence against them. Wainwright v. Greenfield, 474 U.S. 284, 292 (1986). A defendant's silence or negative reply to an officer's post-arrest inquiry requiring an immediate response is "clearly a tacit or overt expression and communicates the defendant's thoughts in regards to the question asked." Dudley v. State, 548 S.W.2d 706, 707-08 (Tex.Crim.App.1977). On the other hand, the Texas Constitution precludes a comment on a defendant's post-arrest silence regardless of whether he has been given his Miranda warnings. Sanchez v. State, 707 S.W.2d 575, 579-80 (Tex.Crim.App. 1980).

A trial court's denial of a motion for mistrial is reviewed under the abuse-of-discretion standard. See Ocon v. State, 284 S.W.3d 880, 884 (Tex. Crim.App.2009). Under this standard, the evidence is viewed in the light most favorable to the trial court's ruling and the ruling is upheld if it falls within the zone of reasonable disagreement. Id. The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of each case. Hernandez v. State, 805 S.W.2d 409, 413-14 (Tex.Crim.App. 1990).

The potential prejudice resulting from a question, or comment, on a defendant's post-arrest silence may be cured by an instruction to disregard. Waldo v. State, 746 S.W.2d 750, 754 (Tex.Crim.App.1988). An instruction to disregard will be presumed effective unless the facts of the case suggest the impossibility of withdrawing the prejudicial impression produced on the minds of the jury. Waldo, at 745.

This Court has relied on six factors in determining whether an instruc-

to disregard cured the prejudicial effect of an improper question relating to a defendant's post-arrest silence:

1.  The nature of the error;

2.  The persistence of the prosecution in committing the error;

3.  The flagrancy of the violation;

4.  The particular instruction given;

5.  The weight of the incriminating evidence; and

6.  The harm to the accused as measured by the severity of the sentence.

See Waldo v. State generally.

A motion for mistrial should be granted if it appears that the evidence was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. See Logan v. State, 698 S.W.2d 680, 683-84 (Tex.Crim.App.1985).

**C.  Application and Analysis**

Here, the trial court did instruct the jury to disregard, but the prosecutor's actions were clearly calculated to inflame the minds of the jurors. See Logan. The trial court's ruling was not within the zone of reasonable disagreement. The court of appeals stated that the evidence showed that Mr. Mayreis did give statements to the police, emergency personnel and emergency responders multiple times. (Attached Appendix, p. 10.) The court of appeals also stated that there was no other mention by the State or any of the State's witnesses of Mr. Mayreis' post-arrest silence. (Id.) Lastly, the court of appeals found that the testimony likely had little, if any, effect on the jury given the weight of guilt. (Id.) For these reasons, the court overruled the complaint. Mr. Mayreis disagrees with the court's decision.

First, the fact that Mr. Mayreis gave other statements does not diminish

his right to remain silent on other occasions. Second, the State had already elicited testimony regarding his pre-arrest silence and even brought his pre-arrest silence back up later on in the trial. (See 3 RR 173-74; see also 5 RR 61-66.) The State would not have done that if such tactic was not going to harm Mr. Mayreis' defense. The problem that has occurred here is that the State was allowed to use Mr. Mayreis' pre-arrest silence against him while instructing the jury to disregard testimony regarding his post-arrest silence. Such an instruction means nothing when the State is allowed to use pre-arrest silence against the defendant. What's more is that before Mr. Mayreis was arrested he became the target of the investigation. No one in their right mind would talk to the police in that situation.

Neither the Fifth and the Fourteenth Amendments to the United States Constitution nor Article I § 10 of the Texas Constitution allows pre-arrest silence to be used against a defendant under these facts as a means to circumvent the prohibition of post-arrest silence. Moreover, as stated previously at the end of Subsection I(C), Mr. Mayreis was not in the apartment every minute of that day. The jury could have believed that there was a reasonable doubt as to whether Mr. Mayreis caused his daughter's death or whether he did so intentionally or knowingly. The evidence of guilt was not overwhelming.

Mr. Mayreis' conviction for capital murder carried a life sentence without parole if found guilty. The prosecutor's improper question had an immediate bearing on the punishment he would receive if convicted. Lastly, the prosecutor's question with the manner in which it fell within a carefully choreographed series of questions was conspicuously offensive—i.e., flagrant. See Merriam-Webster's Collegiate Disctionary, p. 475 (11th ed. 2006). Most if not all of the Waldo factors weigh in favor of granting the

motion for mistrial.

## D. Sufficient Harm is Shown for Reversal

Questions commenting on a defendant's post-arrest silence constitute constitutional error. <u>Veteto v. State</u>, 8 S.W.3d 805-13 (Tex.App.——Waco 2000). Constitutional error requires reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the verdict or punishment. Tex.R.App.P. 44.2(a). Harm analysis for this type of error requires consideration of several factors——most of which I addressed above in Subsection II(C) in order to show that the trial court abused its discretion when it denied the motion for mistrial. These factors include (1) the source and nature of the error, (2) the extent to which the State emphasized it, (3) the weight a jury would probably place upon the error, and (4) whether finding the error harmless would encourage the State to repeat the error with impunity. See <u>Dinkins v. State</u>, 894 S.W.2d 330, 356 (Tex.Crim.App.1985).

In this case, the State was the source of the error. In a certain sense, the State repeated or emphasized the error when it elicited testimony relating to Mr. Mayreis' pre-arrest silence. (3 RR 173-74; 5 RR 61-66.) Under these circumstances, the state and federal constitutions prohibit use of pre-arrest silence and post-arrest silence against a defendant in the manner conducted here. The State's improper question was the culmination of a series of inquiries that intensified the prejudicial impact of the detective's response. This gave the impression that Mr. Mayreis did not provide another statement because he was guilty or had something to hide.

Because there was evidence that another person had the opportunity to inflict the fatal injuries and that if Mr. Mayreis did cause her death he did not do so intentionally or knowingly, the third <u>Dinkins</u> factor weighs in Mr. Mayreis' favor. Lastly, finding this error harmless would encourage the State

to repeat the error with impunity because such a decision would show that the State has no boundaries in pursing unlawful convictions. Most if not all of the Dinkins factors weigh in Mr. Mayreis' favor. It cannot be said beyond a reasonable doubt that the error did not contribute to Mr. Mayreis' conviction and severe punishment.

## PRAYER FOR RELIEF

For these reasons, Appellant Shawn Mayreis respectfully asks the Court to grant discretionary review, appoint counsel, order further briefing, and reverse his conviction and punishment. In the alternative, he asks the Court to enter any other order it finds appropriate.

SUBMITTED and SUBSCRIBED on this the 20 day of May, 2015.

Respectfully submitted,

_____

Shawn Mayreis, Pro Se
TDCJ-CID #1876310
Connally Unit
899 FM 632
Kenedy, Texas 78119

## DECLARATION

"I, Shawn Mayreis, TDCJ-CID #1876310, presently incarcerated in the Texas Department of Criminal Justice Correctional Institutions Division at the Connally Unit in Karnes County, Texas, declare under penalty of perjury under Chapter 132 of the Texas Civil Practice and Remedies Code and 28 U.S.C. § 1746, that I have read this Petition for Discretionary Review, the facts stated in this Petition are true and correct, and I placed this Petition in the prison mailbox in a postpaid package on this day.

"Executed on this the 20 day of May, 2015."

_____

Shawn Mayreis

## CERTIFICATE OF SERVICE

I certify that on this the 20 day of MAY, 2015, I served the following parties with a true and correct copy of this Petition for Discretionary Review by U.S. mail through the prison mailbox in a postpaid package to the addresses below:

Harris County District Attorney's Office
Appellate Division
1201 Franklin
Houston, Texas 77002

State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711

_____
Shawn Mayreis

**APPENDIX**

Fourteenth Court of Appeals' Opinion

**Affirmed and Opinion filed March 24, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00769-CR

### SHAWN MAYREIS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1340556**

# OPINION

This is an appeal from a conviction for capital murder of a child under the age of ten. Appellant challenges the sufficiency of the evidence supporting the conviction, the trial court's denial of appellant's motion for mistrial, and the trial court's evidentiary rulings on autopsy photographs. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The complainant A.M., born in January 2012, was the infant daughter of appellant Shawn Mayreis. After her birth, A.M. left the hospital healthy, without

any abnormal medical problems. A.M. remained healthy and developed normally. A.M.'s mother returned to work near the end of February 2012; appellant cared for A.M. during the day. On March 8, at around 4:00 p.m., A.M.'s mother received a phone call from appellant, who reported that A.M. was not breathing. The mother instructed appellant to call 911. When the mother arrived home, appellant was on the phone with the 911 operator and performing adult cardiopulmonary resuscitation (CPR) on the child,[1] who, according to the mother, looked blue. The paramedics arrived around 4:50 p.m. and were able to achieve a pulse, although A.M. was initially unresponsive.

Medical personnel transported A.M. to Texas Children's Hospital in the Medical Center where she presented with small bruises on her face, abdomen, legs, and the middle of her back. In addition, the child had several large skull fractures, multiple fractures to her anterior and posterior ribs, and retinal hemorrhaging. A.M. was unable to breathe without medical support and was unresponsive to her physical exam. Her brain was dying and swollen. Three days later she was pronounced dead.

Appellant informed emergency responders and medical personnel that A.M. was fine in the morning, but began having difficulty breathing in the early afternoon. Medical personnel found appellant's explanation of A.M.'s injuries impossible and one of A.M.'s treating physicians found evidence that A.M. had been in dire need of medical treatment for hours before appellant called emergency services.

Police arrested appellant and a grand jury indicted him for intentionally or knowingly causing death to a child under ten years of age. Appellant pleaded "not

---

[1] Appellant was performing full-chest compressions on A.M. instead of performing the compressions with two fingers.

guilty." At trial by jury, the child's mother testified along with several medical experts. The medical experts all testified that the extent and severity of A.M.'s injuries showed that they were intentionally inflicted. The jury found appellant guilty as charged and he was automatically sentenced to life in prison without the possibility of parole.

## II. ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

In his first and second issues, appellant challenges the legal sufficiency of the evidence to support his conviction. Specifically, he challenges the sufficiency of the evidence that he caused A.M.'s death as well as the sufficiency of the evidence that he did so intentionally and knowingly.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge" of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits capital murder if the person intentionally or knowingly causes the death of an individual under ten years of age. Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(8) (West, Westlaw through 2013 3d C.S.); *Martin v. State*, 246 S.W.3d 246, 261 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007); *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Hooper*, 214 S.W.3d at 14–15.

Viewed in the light most favorable to the verdict, the evidence at trial showed:

- A.M. had no abnormal medical problems prior to March 8.
- A.M.'s mother bathed A.M. in the evening on March 7 and did not notice any unusual bruises.
- A.M. was healthy when her mother left for work on the morning of March 8.
- A.M. was in the sole care of appellant on March 8 from the time the child's mother left for work until emergency responders were called to the scene. Although appellant left the apartment for a short time in the morning, appellant was the only person taking care of A.M. that day.
- Around 4:00 p.m. appellant called the child's mother and informed her A.M. was not breathing. At the mother's direction, appellant called 911.
- The paramedics and emergency responders who answered appellant's 911 call noticed a striking difference between the mother's response to A.M.'s condition and appellant's response. While the mother was hysterical, appellant appeared calm and unemotional.

- The paramedics noticed bruising around A.M.'s diaper line, above one eye, and on her stomach while they were transporting the infant to the hospital.

- A.M.'s autopsy revealed bruises, rib fractures, skull fractures, and extensive hemorrhaging. A.M. had bruises on her face, above her eyebrows, on her abdomen, on her legs, and in the middle of her back.

- A.M. had several large skull fractures, including a crack that went all the way across her skull. These injuries created hemorrhaging that caused A.M.'s brain to swell. The swelling caused A.M. to lose oxygen and blood to the brain, resulting in irreversible brain damage and death.

- A.M.'s injuries were caused by significant blunt force trauma. A.M. suffered at least two violent blows, one above her right eye and one behind her right ear. A.M.'s parietal bone bent to accommodate the blows until it broke. Her parietal bone failed in multiple directions.

- A.M.'s head injuries were the result of significant force. The amount of force necessary to cause A.M.'s injuries is consistent with dropping a baby down a flight of stairs or from a greater height than the average height of a human being. None of A.M.'s head injuries could have been caused by trying to get her to wake up or respond.

- A.M. suffered extensive retinal hemorrhaging. Her retinas had detached to the back of her left eye in three areas and there were multiple hemorrhages in her right retina.

- The bridge under A.M.'s tongue was torn off. A treating physician testified that the tear likely resulted from the forceful introduction of an object, such as a bottle, into A.M.'s mouth.

- A.M. had twenty-two rib fractures, including fractures to her anterior and posterior ribs. The injuries to A.M.'s anterior ribs could have been caused by improper CPR, but the injuries to her posterior ribs were not typical of improper CPR. A.M.'s posterior rib fractures were consistent with holding an infant forcefully around the ribs and shaking her or hitting her head against something.

- A.M. suffered shearing injuries, which were consistent with suffering a violent trauma that caused her arms to flail.

- The forensic anthropologist testified that, by virtue of the number of injuries, it was unlikely A.M.'s injuries were caused by accidental trauma.

5

- A treating physician opined that A.M.'s injuries occurred at least an hour before medical treatment was sought. A.M. was pulseless and blue when paramedics arrived. It would have taken hours for A.M. to "decompensate" to that state. Also, A.M.'s blood-coagulation status suggested her injuries occurred hours earlier.

- The treating physician testified that A.M.'s condition was "unmistakably due to trauma." According to the physician, "the child's body has been battered and broken, but no history of trauma of any sort [was] provided." The physician testified that extreme violence was necessary to cause A.M.'s injuries and they were not all caused by one event. According to the physician, a person of reasonable intelligence familiar with children would know he was causing serious injuries to the baby that would cause the baby's death. The physician testified that the injuries were intentional.

### 1. Evidence Appellant Caused A.M.'s Death

Appellant argues that there is no evidence that he caused A.M.'s death. He points to evidence that he was away from the apartment briefly in the morning and argues that someone could have entered the apartment and harmed A.M. in his absence. He also argues that the evidence is insufficient to show that he caused A.M.'s death because nothing in his history, relationship with A.M., or response to her death suggested he caused her death.

While the evidence showed that appellant left the apartment for approximately six minutes on the day of A.M.'s death, in the version of events he told emergency responders, medical personnel, and his wife, A.M. was healthy until much later into the day. All of the medical experts testified that A.M.'s injuries were serious and would have been immediately apparent. Based on this evidence, a reasonable jury could have concluded that if an individual had entered the apartment during the short time appellant left A.M. alone and caused these injuries to A.M., appellant would have noticed A.M.'s injuries and would not have told his wife, emergency responders, and medical personnel that A.M. was fine

6

until the afternoon. Furthermore, police responders searched the apartment and did not see any evidence of a break-in. Viewed in the light most favorable to the verdict, the evidence showed that an individual inflicted A.M.'s injuries while A.M. was in appellant's care. The child's mother testified that appellant stated he was the only one who cared for A.M. the day of the injuries. The evidence is sufficient to prove that appellant injured A.M. and that those injuries caused her death. *See Herrera v. State*, 367 S.W.3d 762, 770 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Bearnth v. State*, 361 S.W.3d 135, 140 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding that evidence was sufficient to support conviction when adult had sole access to a child at the time the child's injuries were sustained).

## 2. Evidence Appellant Acted Intentionally or Knowingly

Appellant argues that even if he caused the injuries that killed A.M., the evidence is insufficient for a rational jury to have concluded he did so intentionally or knowingly. A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a) (West, Westlaw through 2013 3d C.S.); *Herrera*, 367 S.W.3d at 771. A person acts knowingly with respect to a result of his conduct when he is aware his conduct is reasonably likely to cause the result. Tex. Penal Code Ann. § 6.03(b) (West, Westlaw through 2013 3d C.S.); *Herrera*, 367 S.W.3d at 770. Proof of a culpable mental state may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

The testifying medical experts all concluded that A.M.'s injuries were intentionally inflicted. Appellant told emergency responders and medical personnel that A.M. had trouble breathing, he attempted to get her to respond by hitting her

7

head, and then performed CPR. But, A.M.'s severe injuries required more force than appellant's explanation allowed and many of her injuries were in locations that were not explained by the history appellant provided. The medical examiner, forensic anthropologist, and treating physician all found appellant's explanation of A.M.'s injuries impossible and testified that the injuries did not result from accidently administering improper CPR or attempting to get A.M. to respond. *See Williams v. State*, 294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding jury could infer intent from medical testimony that child's injuries were extensive, did not match appellant's explanation, and must have been sustained during an episode of abuse).

The medical examiner testified that an accident was unlikely because of the amount of force necessary to cause A.M.'s injuries. *See Herrera*, 367 S.W.3d at 770 (holding the severity of the injuries sustained by the infant constituted evidence of the appellant's intent). According to the medical examiner, the way A.M.'s skull fractured in multiple directions showed the fractures resulted from at least two blunt-trauma impacts from a significant force. The medical examiner testified that the amount of force necessary to cause A.M.'s skull fractures was inconsistent with the amount of force one would apply administering improper CPR or attempting to get a baby to respond. The amount of force necessary to cause A.M.'s skull fractures was more consistent with the impact of hitting a baby violently or dropping a baby down a flight of stairs. The forensic anthropologist testified that the sheer number of injuries A.M. sustained suggested the injuries were intentionally inflicted. In addition to bruising, shearing injuries, and a torn tongue, A.M. had twenty-two broken ribs. The medical experts testified that some of A.M.'s anterior ribs may have broken during improperly-administered CPR, but her posterior ribs would not have broken that way.

The medical examiner testified that after the injuries occurred it would have been immediately apparent that A.M. needed medical care. Yet, according to a treating physician, A.M. was injured for hours before appellant sought help. Based on this testimony, the jury could have concluded that appellant's delay in seeking medical care constituted evidence that he knowingly or intentionally caused A.M.'s death. A rational jury could have concluded from the number and nature of the injuries A.M. suffered that the child's injuries were not the result of an accident and appellant's implausible explanation for the injuries is circumstantial evidence that he inflicted the injuries with the intent or knowledge that they would cause A.M.'s death. *See Bearnth*, 361 S.W.3d at 140 (holding that appellant's inaccurate explanation of injuries was circumstantial evidence of guilt). Based on testimony from the medical examiner, anthropologist, and treating physician that A.M.'s injuries resulted from violent and intentional action, the jury could have concluded that A.M. could not have suffered those injuries unless appellant inflicted them knowingly or intentionally.

The evidence is sufficient for the jury to have come to the rational conclusion that appellant intentionally or knowingly caused A.M.'s death. *See Herrera*, 367 S.W.3d at 770. Appellant's first and second issues are overruled. *See id.*

### B. Testimony Regarding Appellant's Post-Arrest Silence

In appellant's third issue, he asserts that the trial court abused its discretion in overruling his motion for mistrial after the State elicited a comment about appellant's post-arrest silence.

We review a trial court's denial of a motion for mistrial under the abuse-of-discretion standard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the

trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.* A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. *See id.* In determining whether a prejudicial event was so harmful as to warrant a mistrial, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Generally, a prompt instruction to disregard by the trial court will cure the error associated with improper and prejudicial evidence, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the jurors's minds. *See Logan v. State,* 698 S.W.2d 680, 683–84 (Tex. Crim. App. 1985).

The prosecutor asked an investigator if appellant made a statement after he was arrested and the officer testified that appellant did not. The question and answer were brief and the trial was immediately halted after the question was answered. *See Ludwig v. State,* 428 S.W.3d 344, 350–51 (Tex. App.—Amarillo 2014, no pet.) (holding that instruction to disregard cured prejudice when trial court immediately halted trial and issued thorough instruction to disregard). There was no other mention by the State or any of the State's witnesses of appellant's post-arrest silence. Moreover, the evidence showed that appellant did give statements to the police, emergency responders, and medical personnel at multiple times throughout their response and investigation. The trial court adopted a curative measure and instructed the jury to disregard the testimony. Finally, the investigator's answer likely had little, if any, effect on the jury given the weight of the evidence of appellant's guilt. Appellant made several statements indicating that A.M. was in his sole care when her injuries occurred. Evidence of the nature

10

and severity of A.M.'s injuries showed that the injuries were intentionally inflicted. The sole remark on appellant's silence was not so severe as to render the timely curative instruction ineffective. *See Archie*, 221 S.W.3d at 700. We conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See id.* Appellant's third issue is overruled.

## C. Autopsy Photographs

In his fourth issue, appellant argues that the trial court abused its discretion in admitting, over appellant's objection, approximately twenty photographs from the autopsy on A.M.'s body. Appellant argues that the probative value of these photographs was substantially outweighed by the danger of unfair prejudice. In particular, appellant argues that because drawings and figures from the autopsy report had been admitted into evidence, the photographs were unnecessary to display A.M.'s injuries.

We review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Texas Rule of Evidence 403, entitled "Exclusion of Relevant Evidence on Special Grounds," states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). A proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the

11

time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). In the context of the admission of photographs, we also consider the number of photographs, their size, whether they are in color or are black and white, whether they are gruesome, whether any bodies are clothed or naked, and, when applicable, whether the body has been altered by autopsy. *Id.*

During the medical examiner's testimony, the State introduced Exhibits 21 through 31 and 33 through 39. These exhibits are color photos from the autopsy depicting A.M.'s body as it appeared before the autopsy was conducted, the bruises, including several photographs of the bruises on the scalp, and photographs of several angles of the fractured skull. The medical examiner used these photographs to show the jury the extent and severity of A.M.'s injuries. *Harris v. State*, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983) (holding autopsy photographs were admissible where pictorial evidence helped jury understand verbal testimony).

The medical examiner explained that a significant amount of force was necessary to cause the skull fractures. She testified that the force was greater than would be associated with the explanation appellant provided. Particularly in light of appellant's arguments that A.M.'s injuries occurred as a result of his utilization of improper CPR technique, the photographs had significant probative value to prove to the jury that A.M.'s injuries did not result from improper CPR or attempting to get A.M. to respond. The images depicting the photographs of the dead infant's body are gruesome, and the medical examiner used the images throughout her lengthy testimony. These facts weigh against admitting the photographs, but the trial court does not abuse its discretion by admitting photographs of the victim into evidence merely because they are gruesome.

12

*Sonnier v. State*, 913 S.W.2d 511, 518–19 (Tex. Crim. App. 1995). Appellant argued that he accidentally injured A.M. by improperly administering CPR, and the State was required to prove, beyond a reasonable doubt, that A.M.'s injuries were caused intentionally or knowingly. *See Richards v. State*, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The State's evidence that the injuries were not caused by improper CPR or attempting to get A.M. to respond was that A.M.'s injuries were inconsistent with these proffered explanations. The State had to provide the jury with evidence of the injuries A.M.'s suffered. *See Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (holding that gruesome photographs were probative to show the full extent of the injuries appellant inflicted on the victim). The autopsy photographs were probative evidence of A.M.'s injuries. Appellant argues that the State could have presented sketches of A.M.'s injuries to make these points to the jury.

The trial court did not abuse its discretion in allowing the State to show the specifics of the injuries to the jury to prove that A.M.'s injuries did not result from improper CPR. While drawings could show the places of injuries, they could not show the jury the severity of the injuries or the extent of the injuries. *See Herrera*, 367 S.W.3d at 777 (holding that probative value of gruesome autopsy photographs was not substantially outweighed by prejudice where photos showed baby likely did not die from shaking). Having examined each contested photograph in the context of the entire record and the applicable standard of review, we hold that the trial court did not abuse its discretion by concluding that the probative value of the photographs was not substantially outweighed by the potential for unfair prejudice and admitting them into evidence. *See id.* We overrule appellant's fourth issue.

13

## III. CONCLUSION

The evidence is sufficient to support appellant's conviction for capital murder of a child under the age of ten. The trial court did not abuse its discretion in denying appellant's motion for mistrial after the State elicited improper testimony relating to appellant's post-arrest silence, nor did the trial court abuse its discretion in admitting autopsy photographs into evidence.

The judgment of the trial court is affirmed.

/s/    Kem Thompson Frost
       Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.
Publish — TEX. R. APP. P. 47.2(b).

14



# JUDGMENT

# The Fourteenth Court of Appeals

SHAWN MAYREIS, Appellant

NO. 14-13-00769-CR                              V.

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED**.

We further order appellant pay all costs expended in the appeal.

We further order this decision certified below for observance.

FILE COPY



**Justices**

WILLIAM J. BOYCE
TRACY CHRISTOPHER
MARTHA HILL JAMISON
SHARON MCCALLY
J. BRETT BUSBY
JOHN DONOVAN
MARC W. BROWN
KEN WISE

**Chief Justice**
KEM THOMPSON FROST

**Clerk**
CHRISTOPHER A. PRINE

PHONE 713-274-2800

Christopher Prine, Clerk

# Fourteenth Court of Appeals

301 Fannin, Suite 245
Houston, Texas 77002

Tuesday, March 24, 2015

# NOTICE OF OPINION DISTRIBUTION

Shawn Mayreis
#1876310
Connain Unit
899 FM 632
Kenedy, TX 78119

Dan McCrory
Assistant District Attorney
1201 Franklin, Suite 600
Houston, TX 77002
* DELIVERED VIA E-MAIL *

Kurt B. Wentz
5629 FM 1960 West
Suite 115
Houston, TX 77069
* DELIVERED VIA E-MAIL *

RE:   Court of Appeals Number:   14-13-00769-CR
Trial Court Case Number:   1340556

Style:   Shawn Mayreis
v.
The State of Texas

Please be advised the Court today issued an opinion which **AFFIRMED** the above cause.

You may obtain a copy of the Court's opinion and judgment at http://www.search.txcourts.gov/docketsrch.aspx?coa=coa14&s=c. On the request of any entity listed in Rule 48.1, a paper copy of the opinion will be mailed to that entity. For more information about a particular case, please visit the Court's website at http://www.txcourts.gov/14thCOA.

CHRISTOPHER A. PRINE, CLERK

cc:   Olen Underwood (DELIVERED VIA E-MAIL)
Judge, 184th District Court (DELIVERED VIA E-MAIL)
Harris County, District Clerk, Criminal Division (DELIVERED VIA E-MAIL)